

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | No. 03 C 7302 |
| ) | |
| HUMBERTO CRUZ-ALVARADO, ) | Judge Rebecca R. Pallmeyer |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION AND ORDER

On February 8, 2001, a federal grand jury returned an indictment charging Petitioner Humberto Cruz-Alvarado with possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1). Petitioner pleaded guilty to the indictment on May 29, 2001. This court held a sentencing hearing over several days between January 10 and April 4, 2002, ultimately sentencing Petitioner to 60 months in prison, to be followed by five years of supervised release. Petitioner claims that he should have received only between 37 and 46 months in prison pursuant to the "safety valve" exception to the five-year mandatory minimum sentence for his offense. See 18 U.S.C. § 3553(f); U.S.S.G. § 5C1.2. The Seventh Circuit rejected this argument on appeal and Petitioner now seeks a writ of habeas corpus under 28 U.S.C. § 2255. For the reasons set forth here, Petitioner's motion to vacate, set aside, or correct his sentence is denied.

## BACKGROUND

Neither Petitioner nor the government disputes the facts surrounding the offense committed in this case. In October 2000, Petitioner's sister Griselda called him in Chicago from her home in Guadalajara, Jalisco, Mexico, and asked him to accept a shipment for her and to provide temporary storage. *United States v. Alvarado*, 326 F.3d 857, 858 (7th Cir. 2003). Though Petitioner suspected that Griselda's husband was a drug trafficker, he agreed to accept the shipment. Petitioner's wife did not want the goods stored at their apartment, however, so Petitioner arranged

instead for his brother-in-law, Juan De La Torre, to keep them at his house on Sawyer Avenue in Chicago. *Id.*

On November 2, 2000, customs officials at Chicago's O'Hare airport inspected the shipment in question, which consisted of some 30 wooden crates weighing approximately 75 pounds each, and discovered that the crates contained hollowed-out, imitation marble disks filled with marijuana. *Id.* The next day, Customs agents posing as employees of the shipping company delivered the crates to De La Torre's house. A young man who answered the door told the undercover agents to place the crates behind the garage. *Id.* Soon thereafter, Petitioner and De La Torre arrived separately at the home and moved the crates into De La Torre's garage. The Customs agents then executed a search warrant for the premises and arrested Petitioner and De La Torre. The agents seized the marijuana, which totaled 272.15 kilograms, as well as a bill of lading for the shipment. *Id.*

On February 8, 2001, Petitioner was indicted and charged with one count of possession with intent to distribute marijuana in violation of 21 U.S.C. § 841(a)(1).[1] On May 1, 2001, Petitioner and his attorney met with government representatives to offer information concerning his drug-trafficking activities in the hopes of qualifying for a reduced sentence under 18 U.S.C. § 3553(f) and Section 5C1.2 of the United States Sentencing Guidelines. Petitioner's counsel, John DeLeon, attended the proffer hearing, as did Assistant United States Attorney Barry Miller, Special Agent Glen Ryan Comesanas of the Customs Service, and a Spanish interpreter. On May 29, 2001, Petitioner pleaded guilty to the single charge of the indictment.

A. **The Sentencing Hearing**

The sentencing hearing began on January 10, 2002. There was no dispute that Petitioner satisfied the first four requirements for the safety valve: (1) he did not have more than one criminal

---

[1] De La Torre was also charged in connection with this incident, but the complaint against him was later dismissed.

2

history point, as determined under the sentencing guidelines; (2) he did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense; (3) the offense did not result in death or serious bodily injury to any person; and (4) he was not an organizer, leader, manager, or supervisor of others in the offense . . . and was not engaged in a continuing criminal enterprise. 18 U.S.C. § 3553(f). The parties disagreed, however, as to whether Petitioner had "not later than the time of the sentencing hearing . . . truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan . . . ." *Id.*

The government opposed a safety-valve reduction, believing that Petitioner had refused to admit that he had knowledge of the contents of the shipments in advance of their arrival and that he was able but unwilling to disclose contact information for Griselda and her husband. *Alvarado*, 326 F.3d at 858. Petitioner's counsel, Joseph Lopez, told the court that Petitioner did not provide the government with his sister's address and telephone number because he did not have that information. *Id.* at 859. Petitioner's co-counsel DeLeon added that Petitioner's sister did not give Petitioner a telephone or pager number. The court continued the hearing to allow Petitioner an opportunity to provide additional evidence demonstrating his full cooperation. *Id.*

When the hearing continued on January 29, 2002, defense counsel requested a copy of the bill of lading that the Customs agents had seized, explaining that Petitioner recalled telling the agents that his sister's telephone number was on that document. The court continued the hearing on February 11, 2002, by which time AUSA Miller had produced the bill of lading to Petitioner. The document contained three handwritten numbers and several letters ("Gris") scrawled nearby. "The numbers were not [otherwise] identified by function (telephone numbers? garage codes? something else?)" *Id.* at 858, 859. AUSA Miller told the court hat he had spoken with the two customs agents who were present for the arrest, and that both had insisted that Petitioner had not

3

told them anything about the numbers on the bill of lading. The court again agreed to continue the hearing, this time to allow Petitioner and his attorneys an opportunity to investigate the cryptic numbers on the bill of lading. *Id.* at 859.

At the next hearing on February 22, 2002, the government submitted affidavits from the two arresting agents stating that Petitioner did not refer them to the bill of lading when they asked him how to contact his sister. Petitioner's counsel argued that the agents' statements that they did not ask about the numbers on the bill of lading were not credible, and that Petitioner did not discuss his sister's telephone number at the proffer hearing because he no longer had the document containing those numbers. *Id.* The court continued the matter yet again, this time to hear evidence on these issues.

## B. The Evidentiary Hearing

At the April 4, 2002 evidentiary hearing, Petitioner testified that he had told both the prosecutor and the agents about the numbers on the bill of lading at the proffer hearing. He explained that the numbers represented the telephone numbers for Griselda and her husband and that he wrote the letters "Gris" for Griselda. Special Agent Comesanas and AUSA Miller testified that they had asked Petitioner for information about his sister, but that he never provided a telephone number or referred them to the bill of lading. *Id.* at 860. The court resolved this credibility dispute against Petitioner, reasoning, in part, that the agents certainly have utilized that information had they known about it. The court noted, further, that the numbers on the bill of lading did not resemble telephone numbers so the government agents would not have had any reason to suspect their significance. The court declined to grant Petitioner the benefit of the safety valve, finding that his disclosures over the course of the sentencing hearing came too late. *Id.*; (Government's Response to Defendant's Motion, at 11.)

4

The court sentenced Petitioner to the statutory minimum of five years' imprisonment, plus a five-year term of supervised release. *Id.* If Petitioner had been found eligible for the safety valve, he would have been sentenced to between 37 and 46 months in prison. *Id.* (citing U.S.S.G. §§ 3E1.1, 2D1.1(b)(6), 5C1.2).

### C. Petitioner's Appeal

Petitioner appealed his sentence to the Seventh Circuit, arguing that he should have received the safety valve benefit because he timely disclosed his sister's telephone number on the bill of lading. The court first rejected Petitioner's argument that disclosure during the sentencing hearing suffices for safety valve protection, holding that "cooperation that occurs after the sentencing hearing begins comes too late for safety valve purposes." *Id.* at 862. The court also refused to disturb this court's factual determination that Petitioner first disclosed his sister's telephone number to the government at the sentencing hearing, and not at the proffer hearing as he claimed. "We have no reason to second-guess those determinations, and it is well established that the district court's choice of whom to believe is almost never vulnerable to a finding of clear error." *Id.*

### D. Petitioner's Habeas Petition

Petitioner now seeks habeas relief from this court, again arguing that he told the government at the proffer hearing that his sister's telephone number was on the bill of lading. He also suggests that he was denied effective assistance of counsel when his attorney, John DeLeon, failed to testify at the evidentiary hearing. The court considers these arguments below.

## DISCUSSION

Under § 2255, an individual convicted of a federal crime may "move the court which imposed the sentence to vacate, set aside, or correct the sentence" on the grounds that the sentence was imposed in violation of the Constitution or laws of the United States. 28 U.S.C.

5

§ 2255. Such collateral relief is only available, however, where "there are flaws in the ... sentence which are jurisdictional in nature, constitutional in magnitude, or result in a complete miscarriage of justice." *Boyer v. United States*, 55 F.3d 296, 298 (7th Cir. 1995). Where the court finds that there has been a "fundamental defect" resulting in a "complete miscarriage of justice," *Arango-Alvarez v. United States*, 134 F.3d 888, 891 (7th Cir. 1998), quoting *Davis v. United States*, 417 U.S. 333, 346 (1974), the court "shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255.

### A. Safety Valve Eligibility

Most of Petitioner's habeas petition is devoted to reiterating his claim that he was eligible for the safety valve because he disclosed his sister's telephone number "by the time of sentencing[,] [n]otwithstanding his failure to provide his sister's phone number eleven months earlier during a proffer session." (Habeas Petition, at 4.) As noted, the Seventh Circuit has already addressed and rejected that argument. *Alvarado*, 326 F.3d at 862 ("[C]ooperation that occurs after the sentencing hearing begins comes too late for safety valve purposes.") A prisoner may not use a § 2255 motion as "a recapitulation of" or "a substitute for a direct appeal," and a court can decline to reconsider an issue already decided on direct appeal in the absence of changed circumstances of fact or law. *Olmstead v. United States*, 55 F.3d 316, 319 (7th Cir. 1995). Petitioner has not identified any such change of circumstances that would justify reconsidering his argument that he timely disclosed his sister's telephone number at the sentencing hearing. Thus, his petition for relief on this basis is denied.

### B. Ineffective Assistance of Counsel

In his habeas petition, Petitioner also suggests for the first time that the court did not credit his testimony regarding the information he provided to the government because attorney DeLeon,

6

who attended the proffer hearing, did not testify for him at the evidentiary hearing. (Habeas Petition, at 10-11.) Petitioner did not raise this apparent ineffective assistance of counsel argument before the Seventh Circuit, and the government argues that it cannot be raised now. (Government's Response to Defendant's Motion, at 14.) The court disagrees.

Before a district court will review a claim on its merits, the issue must have "been raised in a procedurally appropriate manner." *Theodorou v. United States*, 887 F.2d 1336, 1339 (7th Cir. 1989). As a general rule, "failure to raise constitutional challenges to a conviction on direct appeal bars a petitioner from raising the same issue in a section 2255 proceeding – absent a showing of good cause for and prejudice from the failure to appeal." *Id.* (citing *Norris v. United States*, 687 F.2d 899, 903-04 (7th Cir. 1982). Nevertheless, "failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255." *Massaro v. United States*, 538 U.S. 500, 509 (2003). *See also Galbraith v. United States*, 313 F.3d 1001, 1008 (7th Cir. 2002) ("[I]t is generally proper to raise arguments of ineffective assistance of counsel for the first time on collateral review in a § 2255 petition because such claims usually . . . involve evidence outside the record.") The government here could well argue that Mr. DeLeon's purported testimony should not be deemed "outside the record," as it could have been presented at the sentencing hearing. The court will nevertheless consider Petitioner's ineffective assistance of counsel claim here briefly.

Petitioner bears a heavy burden in attempting to demonstrate that his trial counsel was ineffective. To prevail on such a claim, Petitioner must show that (1) his attorney's representation fell below an objective standard of reasonableness (performance prong), and (2) there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different (prejudice prong). *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984). The performance prong requires that a petitioner "identify the specific acts or omissions of counsel that form the basis for his claim of ineffective assistance." *Momient-El v. DeTella*, 118

F.3d 535, 541 (7th Cir. 1997), quoting *Dugan v. United States*, 18 F.3d 460, 464 (7th Cir. 1994). As for the prejudice prong, a petitioner must show a probability of a different result "sufficient to undermine confidence in the outcome [of the trial]." *Barrow v. Uchtman*, 398 F.3d 597, 604 (7th Cir. 2005) (quoting *Strickland*, 466 U.S. at 694). In the sentencing context, this requires a habeas petitioner to show "a reasonable probability that he received additional prison time because of counsel's error." *United States v. Ruzzano*, 247 F.3d 688, 696-97 (7th Cir. 2001).

Petitioner claims that DeLeon should have testified at the sentencing hearing because he had attended the proffer hearing. "Usually, counsel's decision not to call a witness is a tactical choice not subject to review." *Barnhill v. Flannigan*, 42 F.3d 1074, 1078 (7th Cir. 1994). Significantly, Petitioner himself does not indicate what DeLeon might have said in support of his position, and the record here suggests that testimony consistent with the claim Petitioner is making now would not have been truthful. As the Court of Appeals noted in its decision, Mr. DeLeon advised this court at an earlier hearing "that Cruz had told the government then [at the proffer session] that Griselda had not given him a telephone or pager number." *Alvarado*, 326 F. 3d at 859. Even now, Petitioner himself seeks relief "[n]otwithstanding his failure to provide his sister's phone number . . . during a proffer session." (Habeas Petition, at 4.) In short, there is no basis for the assumption that, had Mr. DeLeon taken the stand at the evidentiary hearing. he would have testified that Petitioner disclosed his sister's telephone number during the proffer. Accordingly, there is no reasonable probability that Petitioner received additional prison time because of any error on the part of counsel. His petition for habeas relief on this basis is denied.

## CONCLUSION

For the reasons stated above, the petition for writ of habeas corpus is denied.

ENTER:

Dated: June 7, 2005

REBECCA R. PALLMEYER
United States District Judge